1

2

3

4            **UNITED STATES DISTRICT COURT**

5               **DISTRICT OF NEVADA**

6                     * * *

7   AMERITINA DENTAL CRAIG LLC dba        Case No. 2:24-cv-01621-RFB-NJK
    NEVADA DENTISTRY AND BRACES, a
8   Nevada Limited Liability Company,         **ORDER**

9               Plaintiff,

10      v.

11  RAY AMERICA, INC., a Foreign Limited
    Liability Company; BRANDON BOMER, an
12  individual; DOES I through X; and ROE
    CORPORATIONS I through X inclusive,
13
                Defendants.
14

15

16      Before the Court is Plaintiff Ameritina Dental Craig LLC's Motion for Entry of Default

17  Judgment. ECF No. 25. For the following reasons, the Court grants the Motion for Default

18  Judgment in part and enters judgment in favor of the Plaintiff against Defendants Infinite Dental

19  Technologies and Brandon Bomer.

20      **I.    PROCEDURAL HISTORY**

21      The Court recites procedural history relevant to the instant motion.

22      On July 2, 2024, Plaintiff filed a Complaint in the Eighth Judicial District Court for the State

23  of Nevada. ECF No. 1. On September 3, 2024, Defendant Ray America Inc. ("Ray America")

24  removed this action to the United States District Court for the District of Nevada. ECF No. 1. On

25  October 30, 2024, Plaintiff filed a Motion for Entry of Clerk's Default against Defendants Infinite

26  Dental Technologies and Brandon Bomer. ECF Nos. 16, 17. The Clerk entered default as to

27  Defendants Infinite Dental Technologies and Brandon Bomer on February 10, 2025. ECF Nos

28  23,24. On February 18, 2025, Plaintiff entered a Motion for Default Judgment against Defendants

1    Infinite Dental Technologies and Brandon Bomer. ECF No. 25.

2        The Court's Order follows.

3    **II.    FACTUAL ALLEGATIONS / BACKGROUND**

4        Plaintiff Ameritina Dental Craig LLC ("Ameritina") is a Nevada Limited Liability

5    Company. Defendant Ray America Inc. ("Ray America") is a corporation incorporated in New

6    Jersey and conducting business in Clark County, Nevada. Defendant Infinite Dental Technologies

7    ("Infinite") is a corporation incorporated in New Jersey and conducting business in Clark County,

8    Nevada. Defendant Brandon Bomer ("Bomer" and collectively with Infinite, "Defendants") is a

9    resident of Arizona, the President of Infinite and an individual conducting business in Clark

10    County, Nevada.

11        In September 2023, Plaintiff contacted Ray America to obtain specific dental equipment

12    (the "Dental Equipment") for its new dental office with an opening date of March 11, 2024. Ray

13    America directed Plaintiff to Infinite, one of its authorized dealers, instructing Plaintiff that it was

14    required to purchase the Dental Equipment needed for the new dental office from Infinite.

15    Subsequently, Plaintiff contacted Infinite and received a quote of $98,060.00 for the dental

16    equipment necessary to open their new dental office. On October 31, 2023, Bomer informed

17    Plaintiff that they would receive a "month end promotion" if they paid a $9,000 deposit that day,

18    and the remaining balance by November 22, 2023. Bomer informed Plaintiff that the promotion

19    being offered would provide a discount of $7,490, reducing the total price for the Dental

20    Equipment to $90,570 (the "Purchase Price"). Plaintiff paid the deposit on that day and paid the

21    remaining balance of the Purchase Price on November 17, 2023. As the instillation date

22    approached, Bomer informed Plaintiff that Infinite's business accounts had been frozen and

23    instructed Plaintiff to contact Ray America to inquire about the Dental Equipment. Due to

24    Defendants Bomer and Ingnite's failure to provide the Dental Equipment Plaintiff purchased,

25    Plaintiff had to delay the opening of their dental office and order alternative dental equipment at

26    an increased cost due to the rushed nature of the order.

27

28    **III.    LEGAL STANDARD**

1    The granting of a default judgment is a two-step process directed by Federal Rule of Civil

2    Procedure 55. Eitel v. McCool, 782 F.2d 1470, 1471 (9th Cir. 1986). The first step is an entry of

3    clerk's default based on a showing, by affidavit or otherwise, that the party against whom the

4    judgment is sought "has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a). The second

5    step is default judgment under Rule 55(b), a decision which lies within the discretion of the Court.

6    Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980). Factors which a court, in its discretion,

7    may consider in deciding whether to grant a default judgment include: (1) the possibility of

8    prejudice to the plaintiff, (2) the merits of the substantive claims, (3) the sufficiency of the

9    complaint, (4) the amount of money at stake, (5) the possibility of a dispute of material fact, (6)

10   whether the default was due to excusable neglect, and (7) the Federal Rules' strong policy in favor

11   of deciding cases on the merits. Eitel, 782 F.2d at 1471–72.

12   If an entry of default is made, the Court accepts all well-pleaded factual allegations in the

13   complaint as true; however, conclusions of law and allegations of fact that are not well-pleaded

14   will not be deemed admitted by the defaulted party. DirecTV, Inc. v. Hoa Huynh, 503 F.3d 847,

15   854 (9th Cir. 2007). Additionally, the Court does not accept factual allegations relating to the

16   amount of damages as true. Geddes v. United Financial Group, 559 F.2d 557, 560 (9th Cir. 1977).

17   Default establishes a party's liability, but not the amount of damages claimed in the pleading. Id.

18   **IV.    DISCUSSION**

19   **A.  Jurisdiction and Service of Process**

20   Before entering default judgment against a non-appearing party, district courts have a duty

21   to consider subject matter jurisdiction and personal jurisdiction. In re Tuli, 172 F.3d 707, 712 (9th

22   Cir. 1999) ("To avoid entering a default judgment that can later be successfully attacked as void,

23   a court should determine whether it has the power, i.e., the jurisdiction, to enter the judgment in

24   the first place."). Pursuant to 28 U.S.C. § 1332(a), federal district courts "shall have original

25   jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of

26   $75,000" and if the controversy is between "citizens of different states." Matheson v. Progressive

27   Specialty Ins. Co., 319 F.3d 1098 (9th Cir. 2003).

28   Plaintiff brings this action in federal court on the basis of diversity jurisdiction under 28

U.S.C. § 1332(a). As set forth in the Complaint, Plaintiff has asserted claims arising under Nevada state law, including claims for Breach of Contract, Tortious Breach of the Implied Covenant of Good Faith and Fair Dealing, Contractual Breach of the Implied Covenant of Good Faith and Fair Dealing, Unjust Enrichment, Conversion, Constructive Fraud, Intentional Misrepresentation, and Deceptive Trade Practices. In this instance, Plaintiff is a resident of Nevada and Defendants are residents of New Jersey and Arizona. Furthermore, the amount in controversy in this case exceeds $75,000.

The Ninth Circuit has articulated a three-prong test to determine whether a party has sufficient minimum contacts to be susceptible to specific personal jurisdiction: (1) the non-resident defendant must purposefully direct his activities or consummate some transaction in the forum or resident thereof, or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice. Lake v. Lake, 817 F.2d 1416, 1421 (9th Cir. 1987). "[W]here a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." Core–Vent Corp. v. Nobel Indus. AB, 11 F.3d 1482, 1487 (9th Cir. 1993) (citation omitted).

Here, the Court has specific personal jurisdiction over Defendants. First, Defendants entered into a business contract to provide goods and services to a Nevada limited liability company. Furthermore, the instant litigation arises out of Defendants alleged breach of the aforementioned contract. Finally, exercise of jurisdiction in this district comports with fair play and substantial justice. Defaulting Defendants have not presented a compelling reason that would render jurisdiction unreasonable. Id. Thus, the Court concludes it may properly exercise personal jurisdiction over Defendants.

Courts must also determine whether there was sufficient service of process on the parties against whom default judgment is requested. See Mason v. Genisco Tech. Corp., 960 F.2d 849, 851 (9th Cir. 1992). In this case, the Court finds Defendants were adequately served under Federal

1    Rule of Civil Procedure 4.

2                **B.  Plaintiff Has Satisfied the Procedural Requirements**

3            First, Plaintiff has satisfied the procedural requirements for a default judgment against

4    Defendants. The Clerk of Court entered default against Defendants on February 10, 2025.

5    Plaintiff's Motion for Default Judgment states that the Defendants are not infants, minors, or

6    otherwise incompetent persons. Additionally, notice under Rule 55(b)(2) is excused because

7    Defendants have not appeared. See Franchise Holding II, LLC. v. Huntington Restaurants Grp.,

8    Inc., 375 F.3d 922, 928 (9th Cir. 2004) (holding there was no appearance where the defendant did

9    not file a motion with the court.) Accordingly, Plaintiff has complied with Local Rule 55-1's

10   procedural requirements for obtaining a default judgment against Defendants.

11               **C.  The Eitel Factors Favor Entering Default Judgment**

12           Next, the Court considers each Eitel factor and finds that granting default judgment against

13   Defendants is appropriate in this case.

14           To begin, the Court finds the first factor favors default judgment because Defendants have

15   declined to defend this action. Defendants failed to answer the Complaint, filed over a year ago,

16   and failed to respond to Plaintiff's Motion for Default Judgment, filed over seven months ago.

17   Because Defendants have failed to appear, Plaintiff is unable to litigate the merits of their claims.

18           Next, the Court examines the merits of the substantive claims and sufficiency of the

19   Complaint and finds that the second and third Eitel factors favor judgment for Plaintiff. In the

20   Complaint, Plaintiff alleged eight causes of action, the first cause of action for breach of contract,

21   second cause of action for breach of the Implied Covenant of Good Faith and Fair Dealing, fourth

22   cause of action for Unjust Enrichment, fifth cause of action for Conversion, and seventh cause of

23   action for Fraudulent Misrepresentation are at issue in this motion. The Court addresses each in

24   turn.

25                    i.    Breach of Contract - Against Infinite

26           Under Nevada law, the plaintiff in a breach of contract action must show (1) the existence

27   of a valid contract; (2) a breach by the defendant, and (3) damage as a result of the breach. Lucky

28   Lucy D LLC v. LGS Casino LLC, 534 P.3d 689, 691 (2023). The Court finds that Plaintiff has

shown that a valid contract exists between the Parties that was breached when Infinite failed to provide the Dental Equipment on or before the installation date of January 18, 2024. Furthermore, Plaintiff has shown that as a result of Infinite's breach they incurred additional costs in purchasing the necessary equipment needed. Additionally, because Infinite breached the contract, Plaintiff had to delay the opening of their new dental office. Accordingly, the Court finds in favor of Plaintiff on the Breach of contract claim

ii. Breach of the Implied Covenant of Good Faith and Fair Dealing - Against Infinite

The implied covenant of good faith and fair dealing is recognized in every contract under Nevada law. Pemberton v. Farmers Ins. Exchange, 109 Nev. 789, 792-93, 858 P.2d 380, 382 (1993). The covenant applies to every contract or duty in the Nevada Uniform Commercial Code. NRS 104.1203. Good faith is a question of fact. Generator-Nevada v. Cummins Engine Co., 114 Nev. 1304, 1311-1312 (1998). The Court finds Plaintiff has adequately plead that Infinite acted in a manner unfaithful to the purpose of their agreement by taking over $90,000 from Plaintiff and failing to timely provide the Dental Equipment or provide Plaintiff a refund.

iii. Unjust Enrichment Against Infinite

"Unjust enrichment is the unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience." Topaz Mut. Co. v. Marsh, 108 Nev. 845, 856 (1992) (citing Nevada Industrial Dev. v. Benedetti, 103 Nev. 360, 363 n.2, 741 P.2d 802, 804 n.2 (1987)). The essential elements of unjust enrichment are a benefit conferred on the defendant by the plaintiff, appreciation by the defendant of such benefit, and acceptance and retention by the defendant of such benefit. Id. In this instance, the Court finds that Plaintiff has adequately pled unjust enrichment in the alternative. Plaintiff has shown that they entered into a contract with Infinite and paid Infinite $90,570 anticipating that in return they would receive the Dental Equipment. Instead, Infinite retained the funds paid by Plaintiff and never provided the Dental Equipment.

iv. Conversion Against Infinite and Bomer

Under Nevada law, conversion is defined as "a distinct act of dominion wrongfully exerted

1   over another's personal property in denial of, or inconsistent with his title or rights therein or in

2   derogation, exclusion, or defiance of such title or rights. <u>M.C. Multi-Family Dev., L.L.C. v.</u>

3   <u>Crestdale Assocs.</u>, LTD., 124 Nev. 901, 910 (2008) (quoting <u>Wantz v. Redfield</u>, 74 Nev. 196, 198,

4   326 P.2d 413, 414 (1958)). Whether a conversion has occurred is a question of fact for the jury. <u>Id</u>

5   (citation omitted). In this instance, the Court finds that Plaintiff has adequately shown conversion.

6   Defendants have maintained possession of the money Plaintiff paid them for the Dental Equipment

7   despite having breached the Parties contract.

8               v.     <u>Fraudulent Misrepresentation Against Infinite and Bomer</u>

9         To sustain a cause of action alleging fraudulent misrepresentation under Nevada law, a

10   plaintiff must prove by clear and convincing evidence that (1) a false representation was made by

11   the defendant, (2) defendant's knowledge or belief that its representation was false or that

12   defendant has an insufficient basis of information for making the representation; (3) defendant

13   intended to induce plaintiff to act or refrain from acting upon the misrepresentation; and (4)

14   damage to the plaintiff as a result of relying on the misrepresentation. <u>Barmettler v. Reno Air, Inc.</u>,

15   114 Nev. 441, 447 (1998). Here, the Court finds that Defendants made a false representation to

16   Plaintiff when Bomer, the President of Infinite, repeatedly communicated various excuses

17   regarding the delay in the delivery of the Dental Equipment. It is logical to infer that Bomer knew

18   details regarding the shipment of the Dental Equipment that he did not disclose to Plaintiff due to

19   his leadership role at Infinite, still he led Plaintiff to believe the Dental Equipment would be

20   delivered. Furthermore, as a result of the misrepresentations made by Defendants, Plaintiff

21   incurred additional expenses and lost profits.

22         Next, the Court considers the fourth <u>Eitel</u> factor, the amount of money at stake and the

23   seriousness of the defendant's conduct. Plaintiff alleges that the amount of money at stake is the

24   Purchase Price of the Dental Equipment, $90,570; pre and post judgment interest, $10,056.49;

25   attorneys' fees and costs, $26,799.32 and punitive damages to be determined by the Court. In sum,

26   the monetary relief sought by Plaintiff is over $127,425.81. Additionally, the Court finds that

27   Defendants blatant disregard for the Parties' contract is egregious and meets the level of

28   seriousness required to satisfy this factor.

The Court finds that the fifth and sixth Eitel factors favor Plaintiff. Because Defendants have failed to plead or otherwise defend in this action, the Court accepts the well-pleaded facts in the Complaint as true. See TeleVideo Sys. v. Heidenthal, 826 F.2D 915, 917-18 (9th Cir. 1987). As discussed above, Plaintiff has adequately alleged that Defendants' actions justify the causes of action brought by Plaintiff. Because the Defendants have failed to oppose the motion, no factual disputes exist that would preclude the entry of default judgment. The Sixth factor favors entry of default judgment when the defendant has been properly served, or the plaintiff shows that the defendant is aware of the lawsuit and has failed to answer. Meadows v. Dominican Republic, 817 F.2d 517, 521 (9th Cir. 1987). Plaintiff properly served Defendants with the Complaint. Given the notices delivered to Defendants regarding this action and the period of time that has elapsed since Plaintiff filed the Complaint, the possibility of excusable neglect is remote.

Finally, the seventh factor requires the Court to account for the strong policy of favoring decisions on the merits. Here, the Defaulting Defendants' failure to appear or respond suggests that a decision on the merits is not a possibility. Furthermore, under Fed. R. Civ. P. 55(a), termination of a case before hearing the merits is allowed when a defendant fails to defend an action.

In conclusion, the Court finds Eitel factors one, two, three, four, five, and six weigh in favor of an entry of default judgment and factor seven is not dispositive to the contrary. Accordingly, because the Eitel factors favor an entry of default judgment.

### D. Plaintiff's Requested Relief

Once liability is established by default judgment, the plaintiff must establish that the requested relief is appropriate. See Geddes v. United Fin. Grp., 559 F.2d 557, 560 (9th Cir. 1977). Plaintiff seeks (1) compensatory damages; (2) pre and post judgment interest; (3) attorneys' fees and costs; (4) punitive damages.

#### i. Compensatory Damages

Compensatory damages are intended to redress the concrete loss that a plaintiff has suffered as a result of a defendant's wrongful conduct. State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 416. Compensatory damages may include not only out-of-pocket loss and other

monetary harms, but also such injuries as impairment of reputation, personal humiliation, and mental anguish. <u>Memphis Cmty. Sch. Dist. v. Stachura</u>, 477 U.S. 299, 307 (1986) (citation omitted). "As such, their proper measure is that which will make good or replace the loss caused by the injury." <u>Bayer v. Neiman Marcus Grp.</u>, 861 F.3d 853, 872 (9th Cir. 2017) (citation omitted). Pursuant to NRS 99.050, parties may agree for the payment of any rate of interest on money due or to become due on any contract. Under NRS 99.040(1), the proper prejudgment interest rate is the single rate in effect on the date of the transaction, which is the date the original contract was signed. <u>Kerala Props., Inc. v. Familian</u>, 122 Nev. 601, 602 (2006). When there is no express contract in writing fixing a different rate of interest, interest must be allowed at a rate equal to the prime rate at the largest bank in Nevada, as ascertained by the Commissioner of Financial Institutions, on January 1 or July 1, immediately preceding the date of the transaction, plus 2 percent, upon all money from the time it becomes due. NRS 99.040. Additionally, NRS 99.040(1)'s interest rate adjustment applies only post judgment. <u>Id.</u> Furthermore, under NRS 17.130(2), a judgment accrues interest from the date of the service of the summons and complaint until the date judgment is satisfied. Unless provided for by contract or otherwise by law, the applicable rate for prejudgment interest is statutorily determined.

In this instance, the compensatory damages sought by Plaintiff are associated with the Purchase Price Plaintiff initially paid for the Dental Equipment, pre and post judgment interest on the principal amount. Plaintiff has shown that they are entitled to $90,570.00 in compensatory damages for money they paid to Defendant for Dental Equipment they did not receive.

In their Motion for Default Judgment, Plaintiff asserts that they are entitled to interest on the principal amount from January 18, 2024, to the date of the agreed upon installation. The Court finds that Plaintiff has incorrectly calculated their prejudgment interest rate because they made the calculation using the Nevada Prime Interest Rate on the date the Dental Equipment should have been installed and delivered, January 18, 2024, rather than the date Parties entered into the agreement, October 31, 2023. The proper calculation of prejudgment interest is $9,283.42. (Principal amount of invoice x Nevada Prime Interest Rate on 10/31/23).

### ii.  Attorneys' Fees and Costs

The Nevada Supreme Court has held that the following factors should be considered when determining if attorneys' fees are reasonable: (1) the qualities of the advocate: his ability, his training, education, experience, professional standing and skill; (2) the character of the work to be done: its difficulty, its intricacy, its importance, time and skill required, the responsibility imposed and the prominence and character of the parties where they affect the importance of the litigation; (3) the work actually performed by the lawyer: the skill, time and attention given to the work; (4) the result: whether the attorney was successful and what benefits were derived. Brunzell v. Golden Gate Nat'l Bank, 85 Nev. 345, 346 (1969). Pursuant to NRS 18,110, a party must demonstrate how claimed costs were necessary and incurred in the action by providing justifying documentation. Parties must provide evidence showing that the costs were reasonable, necessary, and actually incurred. Cadle Co. v. Woods & Erickson, LLP, 131 Nev. 114, 115 (2015).

Plaintiff asserts that he has incurred attorneys' fees in the amount of $25,376.00. Plaintiff's attorneys Ms. Perkins and Mr. Collins have been practicing for over five years and are experienced litigators. Additionally, Plaintiff has been charged hourly rates of $450 per hour for Ms. Perkins, and $365 per hour for Mr. Collins which is lower than the standard rate for attorneys with similar reputation, experience and education in this market. Furthermore, the fees Plaintiff requests are reasonable due to the nature of this action. Thus, the Court grants Plaintiff's request for attorneys' fees. Plaintiff's request for future attorneys' fees and costs is not currently supported by the necessary justifying documentation because the fees have not been incurred.

### iii.  Punitive Damages

When assessing punitive damages courts should consider: (1) the degree of reprehensibility of the defendant's conduct; (2) the ratio to the actual harm inflicted on the plaintiff; and (3) civil or criminal penalties that could be imposed for comparable misconduct. Arizona v. Asarco LLC, 733 F.3d 882, 885 (9th Cir. 2013) (citation omitted). These three guideposts need not be rigidly applied. They provide a framework and must be viewed in the context of the case. Id. Furthermore, "The appropriate relationship between punitive and compensatory damages is not demonstrated simply by concluding the two figures fit neatly into a mathematical formula. The question is whether the difference between the two figures is so wide that the punitive damages have been

divorced from the societal goals of retribution and deterrence." <u>Boyle v. Lorimar Prods.</u>, 13 F.3d 1357, 1361 (9th Cir. 1994). Pursuant to NRS 42.005, in an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud or malice, express or implied, the plaintiff, in addition to the compensatory damages, may recover damages for the sake of example and by way of punishing the defendant.

In this instance, Plaintiff has shown that Defendants engaged in fraudulent behavior by making false representations and breaching the Parties' contract. In addition to compensatory damages granted by the Court, the Court also grants Plaintiff $10,000.00 in punitive damages.

## V.    CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Plaintiff's Motion for Default Judgment is **GRANTED.** The Court compensatory damages totaling $90,570.00, prejudgment interest totaling $9,282.42, attorneys' fees totaling $25,376.00, and punitive damages totaling $10,000.00. For a combined total of $135,228.42.

**IT IS FURTHER ORDERED** that the Clerk of the Court is instructed to enter judgment in favor of Plaintiff against Defendants Infinite Dental Technologies and Brandon Bomer.

**DATED:** September 30, 2025.

**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**