**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

AMERITINA DENTAL CRAIG LLC.,

Plaintiff,

v.

RAY AMERICA INC., *et al.*,

Defendants.

Case No. 2:24-cv-1621-RFB-NJK

**ORDER GRANTING SUMMARY JUDGMENT**

Before the Court is Ray America Inc.'s ("Ray America") Cross Motion for Summary Judgment ("Ray America Mot." (ECF No. 26)), and Plaintiff Ameritina Craig Dental LLC.'s ("Dr. Bakhaj")[1] Motion for Summary Judgment ("Bakhaj Mot." (ECF No. 28)).[2] For the following reasons, the Court grants summary judgment, in its entirety, to Ray America.

## I. FACTUAL FINDINGS

Based on its review of the record, the Court finds the following facts undisputed.

### A. Ray America and Infinite Dental Technologies LLC's distribution agreement.

In February 2020, Ray America, as a manufacturer of dental equipment, and Infinite Dental Technology, LLC ("Infinite"), as a distributor of dental equipment, executed a distribution

---

[1] Although Ameritina Dental Craig LLC., the Court will refer to the plaintiff as Dr. Bakhaj because Dr. Arash Bakaj is the plaintiff's owner.

[2] Ray America's response to Dr. Bakhaj's motion is ("Ray America Op." ECF No. 29); Dr. Bakhaj response Ray America's cross motion is ("Bakhaj Op. ECF No. 34); Ray America's reply to Dr. Bakhaj's motion is ("Ray America Reply" ECF No. 35); and Dr. Bakhaj's reply to Ray America's response is ("Bakhaj Reply" ECF No. 37); Ray America's exhibits are docketed at ("Ray America Exhibits" ECF Nos. 27, 30, 36). Dr. Bakhaj's exhibits are docketed at ("Bakhaj Exhibits" (ECF No. 34-1))

agreement. Bakhaj Exhibits, ECF No. 34-1, at 204; Ray America Exhibits, ECF No. 30-16, at 9.[3] In their agreement, Ray America appointed Infinite "as a non-exclusive distributor" of Ray America products to "End User[s]," meaning "a third party or entity who acquires" Ray America products "from" Infinite "for direct use rather than distribution or resale." Bakhaj Exhibits, ECF No. 34-1, at 197; Ray America Exhibits, ECF No. 30-16, at 2.

The distribution agreement limits Infinite to selling Ray America's "product through Nifty Thrifty Dentists, Dr. Glenn Vo's buying group and its partnered group." Bakhaj Exhibits, ECF No. 34-1, at 198; Ray America Exhibits, ECF No. 30-16, at 3. The agreement prohibits Infinite from "establish[ing] any branch, warehouse, or distribution center" of Ray America products outside the United States, "advertis[ing] [to] or solicit[ing] customers outside the" United States, and selling Ray America's products outside the United States. Bakhaj Exhibits, ECF No. 34-1, at 197, 198; Ray America Exhibits, ECF No. 30-16, at 2, 3.

Further, Infinite cannot use Ray America's trademarks, name, and other designations "for acknowledgement and advertising of" Ray America's products without Ray America's "prior written consent." Bakhaj Exhibits, ECF No. 34-1, at 198; Ray America Exhibits, ECF No. 30-16, at 3. The agreement also notes that Infinite must sell Ray America products "on its own behalf and at its own expense." Bakhaj Exhibits, ECF No. 34-1, at 198; Ray America Exhibits, ECF No. 30-16, at 3. But Infinite is allowed to "independently establish sale prices" for Ray America products "to third parties." Bakhaj Exhibits, ECF No. 34-1 at 199; Ray America Exhibits, ECF No. 30-16, at 4.

The order process followed a simple routine: Infinite identifies a potential customer, the potential customer decides to purchase the product, Infinite sends the customer a contract, Infinite sends a purchase order with a ship date and payment to Ray America, and then Ray America ships out the dental equipment. Barnett Depo., ECF No. 30-5, at 12 lns. 6-13; Barnett Depo., ECF No. 34-1, at 12 lns. 6-13.

Infinite is "responsible for any and all installation, and after-service of" Ray America

---

[3] All page citations refer to the CM/ECF pagination except the depositions, which will be cited as "(name depo, ECF No, at page number and line number)"

products. Bakhaj Exhibits, ECF No. 34-1, at 198; Ray America Exhibits, ECF No. 30-16, at 3. Infinite, the agreement demands, must "be equipped with reasonable resources such as technicians, technical capability[,] and facilities . . . to meet after service requirement[s] from its End Users[.]" Bakhaj Exhibits, ECF No. 34-1, at 200; Ray America Exhibits, ECF No. 30-16, at 5. Infinite is also responsible for training on the [e]quipment and its software." Bakhaj Exhibits, ECF No. 34-1 at 200; Ray America Exhibits, ECF No. 30-16, at 5. The distribution agreement makes Infinite "responsible for all maintenance of" Ray America products "after termination of the agreement." Bakhaj Exhibits, ECF No. 34-1, at 199; Ray America Exhibits, ECF No. 30-16, at 4.

"When a complaint occurs," Infinite must "have an engineer[,] who is qualified by Ray [America,] make inquiries into the nature of the complaint, via phone calls, remote control or on-site visit." Bakhaj Exhibits, ECF No. 34-1, at 210; Ray America Exhibits, ECF No. 30-16, at 15. If the engineer can solve the issue, they must resolve the issue, and the Customer Claim Report must be filled out and reported to Ray America. Bakhaj Exhibits, ECF No. 34-1, at 210; Ray America Exhibits, ECF No. 30-16, at 15. If the engineer cannot solve the issue, they must "fill out the Customer Claim Report, explaining the defect in" as much detail as possible, and then the engineer must submit the document to Ray America. Bakhaj Exhibits, ECF No. 34-1, at 210; Ray America Exhibits, ECF No. 30-16, at 15. With that information, Ray America will then determine whether to resolve the problem remotely or send another engineer onsite. Bakhaj Exhibits, ECF No. 34-1, at 210; Ray America Exhibits, ECF No. 30-16, at 15.

**B. Dr. Arash Bakhaj's dispute with Infinite and Ray America.**

Dr. Bakhaj, in 2016, contacted Ray America's sales department to purchase dental equipment when he was opening his first dental office. Bakhaj Mot., ECF No. 28, at 7; Ray America Op., ECF No. 29, at 3. Ray America referred Dr. Bakhaj to an authorized dealer located in Arizona. Bakhaj Mot., ECF No. 28, at 7; Ray America Op., ECF No. 29, at 3. Dr. Bakhaj purchased and received the desired dental equipment from the authorized dealer. Bakhaj Mot., ECF No. 28, at 7; Ray America Op., ECF No. 29, at 3-4. About four years later, Dr. Bakhaj, who was opening his second dental office, contacted Ray America to purchase dental equipment. Bakhaj Mot., ECF No. 28, at 7; Ray America Op., ECF No. 29, at 4. Ray America directed Dr.

Bakhaj to another authorized dealer. Bakhaj Mot., ECF No. 28, at 7; Ray America Op., ECF No. 29, at 4. Like in 2016, Dr. Bakhaj purchased and received the dental equipment without issue. Bakhaj Mot., ECF No. 28, at 7; Ray America Op., ECF No. 29, at 4.

In August 2023, Dr. Bakhaj, who was seeking to open his third dental office, again contacted Ray America. Bakhaj Mot., ECF No. 28, at 7; Ray America Op., ECF No. 29, at 5. Ray America then directed Dr. Bakhaj to Infinite. Bakhaj Mot., ECF No. 28, at 7; Ray America Op., ECF No. 29, at 5. About a month later, Dr. Bakhaj spoke with Infinite's owner, Brandon Bomar ("Bomar"), about purchasing Ray America manufactured dental equipment. Bakhaj Mot., ECF No. 28, at 7; Ray America Op., ECF No. 29, at 5. Bomar, shortly after this conversation, sent Dr. Bakhaj an estimate of the dental equipment Dr. Bakhaj sought to purchase. Bakhaj Mot., ECF No. 28, at 8; Ray America Op., ECF No. 29, at 5.

Soon after sending Dr. Bakhaj the price quote, Bomar tried to sell Dr. Bakhaj a newly developed, Ray America facial scanner. Bakhaj Mot., ECF No. 28, at 8; Ray America Op., ECF No. 29, at 6; see Bakhaj Exhibits, ECF No. 34-1 at 52. Bomar, trying to make the sale happen, scheduled Ray America representative Makia Kim to perform an in-person demonstration of the facial scanner. Bakhaj Mot., ECF No. 28, at 8; Ray America Op., ECF No. 29, at 6. The demonstration occurred on October 17, 2023. Bakhaj Mot., ECF No. 28, at 8; Ray America Op., ECF No. 29, at 6. Despite the demonstration, Dr. Bakhaj decided not to buy the facial scanner. Bakhaj Mot., ECF No. 28 at 8; Ray America Op., ECF No. 29, at 6.

Two weeks after the demonstration, Dr. Bakhaj requested a quote without the facial scanner from Bomar. Bakhaj Mot., ECF No. 28, at 8; Ray America Op., ECF No. 29, at 6; Bakhaj Exhibits, ECF No. 34-1, at 56. That same day, Bomar emailed Dr. Bakhaj: "The VP of sales at Ray America is giving me some extra incentives and lower costs to close deals today for month end. Trying to always make sure that I give you the best deal possible so . . . I can maximize our discount with them." Bakhaj Mot., ECF No. 28, at 8; Ray America Op., ECF No. 29, at 6; Bakhaj Exhibits, ECF No. 34-1, at 56. Bomar was able to lock the deal in if Dr. Bakhaj paid 10 percent of the quote that day and finished paying the remaining 90 percent on or before November 22, 2023. Bakhaj Mot., ECF No. 28, at 8; Ray America Op., ECF No. 29, at 6. Dr. Bakhaj agreed, paid 10 percent of the

invoice that day, and paid the remaining 90 percent before the November 22 deadline. Bakhaj Mot., ECF No. 28, at 8; Ray America Op., ECF No. 29, at 6-7.

Despite Dr. Bakhaj's attempts to contact Bomar over many months and obtain the purchased-dental equipment, Bomar and Infinite never delivered the equipment. Bakhaj Mot., ECF No. 28, at 9; Ray America Op., ECF No. 29, at 7.

During these months, Infinite became involved with various issues with other doctors. See ECF No. 30-5, at 35 lns. 2-5; ECF No. 34-1, at 35 lns. 2-5.

On November 29, 2023, a doctor filed a complaint with Ray America about Infinite. See Barnett Depo., ECF No. 30-5, at 36 lns. 3-9; Barnett Depo., ECF No. 34-1, at 36 lns. 3-9. That doctor, in her complaint, noted that she signed an order with Infinite, she paid Infinite, and then decided she wanted to use another distributor. Barnett Depo., ECF No. 30-5, at 36 lns. 17-20; Barnett Depo., ECF No. 34-1, at 36 lns. 17-20. When the doctor requested a refund from Infinite, Bomar did not return her money. Barnett Depo., ECF No. 30-5, at 36 lns. 19-22; Barnett Depo., ECF No. 34-1, at 36 lns. 19-22. Ray America's Vice President of Sales Ray Barnett ("Barnett"), on December 15, 2023, called Bomar and told him that he needed to return the doctor's money. Barnett Depo., ECF No. 30-5, at 36 lns. 22-23; Barnett Depo., ECF No. 34-1, at 36 lns. 22-23. Bomar complied. ECF No. 30-5, at 36 lns. 23-24; Barnett Depo., ECF No. 34-1, at 36 lns. 23-24.

Dr. Navin Pathyil ordered a unit from Infinite, Infinite submitted a purchase order to Ray America on December 29, 2023, but Dr. Pathyil did not receive the ordered unit. Barnett Depo., ECF No. 30-5, at 37 lns. 1-7; Barnett Depo., ECF No. 34-1, at 37 lns. 1-7. Similarly, Dr. Grace Chung purchased dental equipment from Infinite, sent money to Bomar for the equipment, and she also never received her unit. Barnett Depo., ECF No. 30-5, at 37 lns. 14-17; Barnett Depo., ECF No. 34-1, at 37 lns. 14-17. Barnett became aware of this issue on March 11, 2024, when Dr. Chung's husband called him. Barnett Depo., ECF No. 30-5, at 37 lns. 14-19; Barnett Depo., ECF No. 34-1, at 37 lns. 14-19. Ray America never received a purchase order for Dr. Chung's dental equipment. ECF No. 30-5, at 37 lns. 19-22; ECF No. 34-1 at 36 lns. 19-22. Drs. Shahram Ghodsi and Francis Haik encountered the same issue. See Barnett Depo., ECF No. 30-5, at 38 lns. 4-23; Barnett Depo., ECF No. 34-1, at 36 lns. 4-23.

On March 1, 2024, Dr. Bakhaj emailed Ray America requesting to speak to Barnett. Ray America Op., ECF No. 29, at 7; see Bakhaj Mot., ECF No. 28, at 9. That same day, Dr. Bakhaj and Barnett exchanged a slew of text messages. See Bakhaj Exhibits, ECF No. 34-1, at 101-12; Bakhaj Mot., ECF No. 28, at 9. At the end of their text thread from that day, Barnett texted Dr. Bakhaj "[l]et me see what I can do." Bakhaj Exhibits, ECF No. 34-1, at 112; Ray America Op., ECF No. 29, at 8.

The next day, Barnett texted Dr. Bakhaj, "I checked with my accounting team and he already has open orders with us that have not been paid. As of now we can't release any orders to him until his balance is resolved." Bakhaj Exhibits, ECF No. 34-1, at 114; Ray America Op., ECF No. 29, at 8. Dr. Bakhaj responded, with among other things, that he was requesting a refund. Bakhaj Exhibits, ECF No. 34-1, at 114; Ray America Op., ECF No. 29, at 8. Barnett responded with "I'm working a different angle. I'm seeing if I can get you a loaner device until we square this away." Bakhaj Exhibits, ECF No. 34-1, at 115; Ray America Op., ECF No. 29, at 8. Dr. Bakhaj declined this option. ECF No. 34-1, at 116; Ray America Op., ECF No. 29, at 8. Barnett responded "I totally understand and want to help. I'm trying to think of outside the box ideas here. It's unfortunate that it's a Saturday. I will get you an answer as soon as I can." Bakhaj Exhibits, ECF No. 34-1, at 116; Ray America Op., ECF No. 29, at 8.

Two days after this conversation, Dr. Bakhaj purchased dental equipment from Patterson Dental. Ray America Op., ECF No. 29, at 8.

## II. PROCEDURAL HISTORY

On July 2, 2024, Dr. Bakhaj began this action by filing a complaint in Nevada state court against Ray America, Infinite, Bomar, John Does 1-10, and Roe Corporations 1-10 ("Defendants"). ECF No. 1-1 at 1, 2. Dr. Bakhaj, in his Complaint, raised 10 claims: (1) breach of contract against Infinite; (2) tortious breach of the implied covenant of good faith and fair dealing against Infinite; (3) contractual breach of the implied covenant of good faith and fair dealing against Infinite; (4) unjust enrichment against Infinite; (5) conversion against Bomar and Infinite; (6) fraud-constructive fraud against Bomar and Infinite; (7) fraud-intentional misrepresentation

against Bomar and Infinite; (8) fraud-negligent misrepresentation against Ray America; (9) deceptive trade practices against all Defendants; and (10) respondeat superior against Ray America. ECF No. 1-1, at 4-11.

A little over two months later, Ray America removed the case from state court to this Court. ECF No. 1, at 1. The parties, soon after this case was removed, began engaging in discovery. See e.g. ECF No. 14. During discovery, Dr. Bakhaj moved for an entry of Clerk's Default on Bomar and Infinite. ECF Nos. 16, 17. The Clerk entered default. ECF No. 18.

Dr. Bakhaj and Ray America then cross moved for summary judgment on all claims (negligent misrepresentation, deceptive trade practices, and respondeat superior). ECF Nos. 26, 27, 28. Both parties responded and replied. ECF Nos. 29, 30, 34, 35, 36, 37. Simultaneously, Dr. Bakhaj moved for default judgement against Infinite and Bomar. ECF No. 25. This Court granted Dr. Bakhaj's default judgment motion. ECF No. 38. The Court now addresses the parties pending summary judgment motions.

## III. LEGAL STANDARD

A party is entitled to summary judgment when they demonstrate "that there is no genuine dispute of material fact and [they] are entitled to judgment as a matter of law" on their claim(s). See FED. R. CIV. P. 56(a); see also Hollis v. R&R Rests., 159 F.4th 677, 683 (9th Cir. 2025) (citation omitted). A fact is material if it "might affect the outcome of the suit under the governing law." Eat Right Foods Ltd. v. Whole Foods Mkt., Inc., 880 F.3d 1109, 1118 (9th Cir. 2018) (quoting Anderson v. Liberty Lobby Inc., 477 U.S. 242, 247 (1986)). "A genuine dispute of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Lerner & Rowe PC v. Brown Engstrand & Shely LLC, 119 F.4th 711, 717 (9th Cir. 2024) (quoting Anderson, 477 U.S. at 248). At this procedural posture, the Court is solely charged with determining "whether there is a genuine issue [of fact] for trial;" in other words, this Court will not "weigh the evidence" or make credibility determinations to resolve factual disputes, which are ultimately reserved for the factfinder in this case. See Eat Right Foods Ltd., 880 F.3d at 1118 (quoting Anderson, 477 U.S. at 249); see also Zetwick v. Cnty. of Yolo, 850 F.3d 436, 441

(9th Cir. 2017) (citations omitted). In doing so, the Court "view[s] the evidence in the light most favorable to the nonmoving party and make[s] all reasonable inferences in favor of that party." Eat Right Foods Ltd., 880 F.3d at 1118 (citing Tolan v. Cotton, 572 U.S. 650, 660 (2014)).

Federal courts apply a two-step framework to review motions for summary judgment. First, this Court must decide whether the moving party has met their initial burden by "demonstrating the absence of a genuine issue of material fact." Hollis, 159 F.4th at 683 (citing Celotex Corp v. Catrett, 477 U.S. 317, 323 (1986)). The nature of this initial showing varies depending on which party carries the ultimate burden of proof on a given claim. When the movant does, they "must come forward with evidence which would entitle [them] to a directed verdict if the evidence went uncontroverted at trial." Gillings v. Time Warner Cable LLC, 583 Fed.Appx. 712, 715 (9th Cir. 2014) (unpublished disposition) (quoting C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc., 213 F.3d 474, 480 (9th Cir. 2000)). When the moving party does not carry the ultimate burden of proof, they can merely "point[ ] out that there is an absence of evidence to support the nonmoving party's case." Lerner, 119 F.4th at 717–18 (citation omitted).

If the moving party meets their initial burden, the Court must decide whether the non-moving party "set forth, by affidavit or as otherwise specified in Rule 56, specific facts showing that there is a genuine issue for trial." Id. at 178 (citation omitted). It is well-settled that a party cannot defeat summary judgment by presenting "the mere existence of a scintilla of evidence;" in other words, "the non-moving party must do more than show there is some 'metaphysical doubt' as to the material facts at issue." In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (first citing Anderson, 477 U.S. at 252; then quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)). Rather, "the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in [their] favor." Id. (citing Anderson, 477 U.S. at 252).

Finally, in reviewing the record, the Court relies on the Parties to "identify with reasonable particularity the evidence" they want it to consider. See Californians for Renewable Energy v. Cal. Pub. Utils. Comm'n, 922 F.3d 929, 936 (9th Cir. 2019) (citation omitted); see also FED. R. CIV. P. 56(c)(1) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion

by . . . citing to particular parts of materials in the record."). This Court will not "scour the record in search of a genuine issue of triable fact," nor does it have to. See Californians for Renewable Energy, 922 F.3d at 936 (citation omitted); see also Schneider v. TRW, Inc., 938 F.2d 986, 990 n.2 (9th Cir. 1991) (citation omitted) (clarifying that a "[d]istrict court is under no obligation to mine the full record for issues of triable fact.").

## IV. DISCUSSION

The Court grants summary judgment, in its entirety, to Ray America. In Section A, the Court grants Ray America summary judgment on Dr. Bakhaj's negligent misrepresentation claim. In Section B, the Court grants summary judgment on all three of Dr. Bakhaj's deceptive trade practice claims. In Section C, the Court grants Ray America summary judgment on Dr. Bakhaj's respondeat superior claim under an actual authority theory.

### A. Dr. Bakhaj cannot demonstrate that Ray America made a negligent misrepresentation.

The is no genuine issue of fact as to whether Ray America made negligent misrepresentations to Dr. Bakhaj. To establish a negligent misrepresentation under Nevada law, a party moving for summary judgment must establish, among other things, a false representation. Here, Dr. Bakhaj cannot do so. In contrast, Ray America can demonstrate that its representations were true. As a result, the Court grants summary judgment to Ray America.

Under Nevada law, a negligent misrepresentation claim requires

> 1) a representation that is false; 2) that the representation was made in the course of the defendant's business or in any action in which he has a pecuniary interest; 3) the representation was for the guidance of others in their business transactions; 4) the representation was justifiably relied upon; 5) that such reliance resulted in pecuniary loss to the relying party; and 6) that the defendant failed to exercise reasonable care or competence in obtaining or communicating the information.

G.K. Las Vegas Ltd. P'ship v. Simon Prop. Grp., Inc., 460 F. Supp. 2d 1246, 1262 (D. Nev. 2006); see Halcrow, Inc. v. Eighth Jud. Dist. Ct., 129 Nev. 394, 400 (Nev. 2013) (citation modified) (identifying the elements of negligent misrepresentation). A party may be liable for negligent misrepresentation if they "made an affirmative false statement []or omitted a material

fact it was bound to disclose." Noonan v. Bayview Loan Servicing, LLC, 135 Nev. 695, 2019 WL 1552690 at *1 (Nev. 2019) (citing Halcrow, 129 Nev. at 400).

No reasonable juror can find that Ray America made a false representation. Dr. Bakhaj claims that Ray America made a false representation when it required him to purchase dental equipment from Infinite. Bakhaj Mot., ECF No. 28, at 12. Dr. Bakhaj contends that this representation is false because Ray America did not inform him of any other distributors and the referral to Infinite implied reliability. Id.; Bakhaj Reply, ECF No. 37, at 17.[4] This implied reliability theory suffers from two defects.

First, the statement, at the time it was made, was true. Dr. Bakhaj knew that Ray America does not sell its own products, it uses distributors. Dr. Bakhaj had previously purchased equipment from Ray America on two occasions—both of which involved sales through vendors or distributors. See Bakhaj Mot., ECF No. 28, at 7 Thus, Ray America's referral of Dr. Bakhaj to Infinite because Ray America does not sell its own products was a true statement. So, there cannot be a false representation based on this statement. See, e.g., Guilfoyle v. Olde Monmouth Stock Transfer Co., 130 Nev. 801, 811-12, (Nev. 2014) (finding no negligent misrepresentation when there is no false statement).

To the extent Dr Bakhaj argues that Ray America said Infinite is its only distributor in the area, the record does not support that argument. Ray America, excluding Infinite, had four other distributors at the relevant time period. Ray America Exhibits, ECF No. 30-17, at 4-5. Further, Dr. Bakhaj, at his deposition, testified that no one at Ray America lied to him. Bakhaj Depo., ECF No. 34-1, at 33 lns. 14-16. Thus, this argument fails on the record before the Court.

Second, construing the facts in the light most favorable to Ray America, no reasonable juror could find that a referral to a third party is a false representation. Dr. Bakhaj's reliance on Elizabeth E. v. ADT Sec. Systems West, Inc., 108 Nev. 889 (Nev. 1992), for an implied reliability theory is misplaced. In that case, the purchased and installed alarm system did not include a panic or holdup feature. Id. at 892. But when the alarm system was being installed, the mechanic instructed the plaintiff on how to operate the panic buttons, which did not exist. Id. at 893. The

[4] The Court will refer to this argument as the "implied reliability theory."

Elizabeth E. court, on those facts, concluded that "if a representative of ADT negligently misrepresented the existence of a panic feature that was not purchased or programmed into the Taco Bell alarm system, a basis for liability in tort has been asserted." Id. at 893. This case is therefore distinguishable because Elizabeth E. concerned an affirmative statement of reliability. Id. But here, under Dr. Bakhaj's own theory, reliability was implied. Bakhaj Reply, ECF No. 37, at 17 ("Ray America must have known that Infinite would rely upon the [d]istribution [a]greement and Infinite's implied reliability."). Ray America's mere referral of Dr. Bakhaj to Infinite cannot be construed as an implicit guarantee of reliability.

Additionally, the Court finds that Ray America's referral to Infinite cannot by itself serve as a basis for a false representation claim. It is undisputed that, at the time Ray America referred Dr. Bakhaj to Infinite, it could not have had the information indicating that Infinite was unreliable. Specifically, Dr. Bakhaj relies on Infinite's issues with the six other doctors, but the earliest complaint to Ray America about Infinite occurred on November 29, 2023, which was after Dr. Bakhaj purchased the dental equipment from Infinite. See Bakhaj Exhibits, ECF No. 34-1, at 35-36.

Finally, Dr. Bakhaj's assertion that Nevada law requires some form of comprehensive unsolicited disclosure of all possible information about a transaction is misplaced. Indeed, Dr. Bakhaj does not, and cannot, cite any authority that requires Ray America to make such a disclosure to prospective clients. See generally Bakhaj Mot., ECF No. 28, at 11-13; Bakhaj Reply, ECF No. 37, at 15-19. Nevada law requires no such expansive disclosure. See Nevada Nat. Bank v. Gold Star Meat Co., 89 Nev. 427, 430 (Nev. 1973) ("Hastings was originally under no duty to divulge any information, but once having voluntarily ventured on such a course of action, he was thenceforth required to exercise due care").

The Court ultimately finds that there is no false representation. The Court rejects Dr. Bakhaj's argument—which advocates for a comprehensive unsolicited disclosure requirement. Failure to disclose all possible information about a purchase is not a false representation. And because the Court finds that there is no false representation, the first element of false misrepresentation, it necessarily finds that there is no false misrepresentation. See e.g., Noonan,

2019 WL 1552690 at *1 (Nev. 2019) ("Summary judgment was appropriate on the negligent misrepresentation claim because Hampton neither made an affirmative false statement nor omitted a material fact it was bound to disclose.") To end, the Court grants Ray America summary judgment as to Dr. Bakhaj's negligent misrepresentation claim.

**B. Ray America did not engage in deceptive trade practices under Nevada law.**

The Court finds that there is no genuine issue of material fact as to whether Ray America engaged in deceptive trade practices. To prove a deceptive trade practice claim under Nevada law, a party moving for summary judgment must prove, among other things, Defendant committed consumer fraud. Here, Bakhaj cannot establish a genuine issue of disputed fact that Ray America engaged in consumer fraud. The Court thus grants summary judgment in favor of Ray America.

Under Nevada law, "[t]o prove an [deceptive trade practices] claim, a consumer-plaintiff must prove: (1) an act of consumer fraud by the defendant (2) caused (3) damage to the plaintiff." Wood v. Winnebago Indus., Inc., No. 22-16805, 2024 WL 2814507, at *4 (9th Cir. June 3, 2024) (internal citations omitted).

**1. Dr. Bakhaj cannot establish consumer fraud under 598.0915(2).**

The Court grants summary judgment to Ray America as to Infinite's Section 598.0915(2) claim. To establish an act of consumer fraud under Section 598.0915(2), plaintiffs must prove that the defendant "[k]nowingly ma[de] a false representation as to the source, sponsorship, approval or certification of goods or services for sale or lease." NEV. REV. STAT. § 598.0915(2). Here, Dr. Bakhaj's theory is that "Ray America knew that it would not fulfill [his] order because of Infinite's unresolved invoices." Bakhaj Reply, ECF. No. 37, at. 13. The record does not support this argument. During the March 1, 2024, text exchange, Barnett told Dr. Bakhaj: "let me see what I can do . . . I'll try and get you an answer tomorrow." Bakhaj Exhibits, ECF No. 34-1, at 112. Barnett only said that he would see if he could help Dr. Bakhaj. Barnett did not represent that Ray America definitively could fulfill Dr. Bakhaj's order. Moreover, Dr. Bakhaj knew that the equipment had been purchased from Infinite and not Ray America. Barnett did not make any statements that Ray America could guarantee a resolution but simply indicated that it would

inquire with its distributor as to the issue. See Wild Game Ng, LLC, 2015 WL 7575352 at *1 ("[d]eceptive trade practice claims . . . require evidence that the opposing party knowingly made a false representation.") (citing NEV. REV. STAT. §§ 598.0915 (5), (7), (15)). To the extent that Dr. Bakhaj is arguing that Barnett knew about Infinite's open invoices before texting him, nothing in the record supports this argument. See Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002) ("Refus[ing] to find a 'genuine issue' where the only evidence presented is 'uncorroborated and self-serving' testimony."). Construing the facts in the light most favorable to Dr. Bakhaj, no reasonable juror could determine that Barnett, on behalf of Ray America, "knowingly" made a false presentation as to Infinite's approval to sell Ray America products. The Court therefore grants Ray America summary judgment on this issue.

**2. Dr. Bakhaj cannot establish consumer fraud under Section 598.0915(5).**

Dr. Bakhaj cannot establish a genuine issue of disputed fact as to his Section 598.0915(5) claim. To establish an act of consumer fraud under Section 598.0915(2), plaintiffs must establish that the defendant "[k]nowingly ma[de] a false representation as to the characteristics, ingredients, uses, benefits, alterations or quantities of goods or services for sale or lease or a false representation as to the sponsorship, approval, status, affiliation or connection of a person therewith." NEV. REV. STAT. § 598.0915(5). Here, Dr. Bakhaj argues that "[p]ointing [him] to a specific distributor implies, by conduct, that Infinite was trusted by Ray America to follow through on its obligations and sale of Ray America Products." Bakhaj Reply, ECF. No. 37, at 14. But this argument fails because Ray America conduct was not knowing within the meaning of the statute. Knowing, under Section 598.0915, "does not require that the defendant intend to deceive with the act or omission, or even know of the prohibition against the act or omission, but simply that the defendant is aware that the facts exist that constitute the act or omission." Poole v. Nevada Auto Dealership Invs., LLC, 135 Nev. 280, 284, (Nev. App. 2019); see R.J. Reynolds Tobacco Co. v. Eighth Jud. Dist. Ct. in & for Cnty. of Clark, 138 Nev. 585, 592 (2022) (quoting Poole's definition of knowing with approval). Here, the undisputed facts indicating Infinite's unreliableness occurred after Ray America referred Dr. Bakhaj to infinite. See, e.g., Barnett Depo., ECF No. 30-5, at 36 lns. 3-25; Barnett Depo., ECF No. 34-1 at 36 lns. 3-25. The Court finds that no reasonable juror could find

that Ray America knowingly made a false statement as to the reliability of Infinite's service. The Court therefore grants summary judgment to Ray America on Dr. Bakhaj's Section 598.0915(5) claim.

**3. Dr. Bakhaj cannot establish consumer fraud under Section 598.0915(15).**

Dr. Bakhaj cannot establish a genuine issue of disputed fact as to his Section 598.0915(15) claim. To establish an act of consumer fraud under 598.0915(15), plaintiffs must demonstrate that the defendant "[k]nowingly ma[de] any other false representation in a transaction." NEV. REV. STAT. § 598.0915(15). Here, Ray America presents two theories. First, Dr. Bakhaj argues that Ray America falsely claimed that Infinite "never had a problem" even though Ray America knew of Dr. Bakhaj's issues. Bakhaj Exhibits, ECF No. 34-1 at pg. 102; Bakhaj Reply, ECF No. 37, at 14. Second, Dr. Bakhaj argues that Ray America falsely represented to him that it could not help to resolve the issue. Bakhaj Reply, ECF No. 37, at 14. Both arguments fail.

As to the first argument, Dr. Bakhaj does not try proving causation. Assuming that Barnett's March 1, 2024, text message falsely represented that Ray America did not have any problems with Infinite, Dr. Bakhaj does not argue that Barnett's statement caused any damage to Dr. Bakhaj. See Bakhaj Reply, ECF No. 37, at 13-14; Ray America Op., ECF No. 28, at 15. The Court therefore cannot grant Dr. Bakhaj summary judgment on his Section 598.0915(15) claim. See Lerner, 119 F.4th at 717–18 (internal citation omitted).

As to the second argument, Ray America did not make a false representation. Dr. Bakhaj argues that Ray America falsely represented to Dr. Bakhaj that it could not help resolve the issue. Bakhaj Reply, ECF No. 37, at 15. But when Barnett tried to get Dr. Bakhaj a loaner device, Dr. Bakhaj rejected the offer. Bakhaj Exhibits, ECF No. 34-1, at 147. In other words, Ray America could help, Ray America tried to help, but Dr. Bakhaj rejected the help because it was not the help he wanted. Ray America's offer to the help Dr. Bakhaj is not a false representation because it is not the help Ray America wanted. Worse, Dr. Bakhaj's argument is a misstatement of the facts. The offer of a loaner device would not have and could not have resolved the ultimate issue that he had with Infinite. The record demonstrates that Ray America could not resolve the issue between Infinite and Dr. Bakhaj but it could offer assistance to help mitigate the harm to Dr. Bakhaj. Ray

America did not make a false statement. See Wild Game Ng, LLC, 2015 WL 7575352 at *1.

Moreover, there is no evidence Ray America made any false representations to Dr. Bakhaj. Construing the facts in the light most favorable to Dr. Bakhaj, the only representation that Ray America made to him is that he needed to purchase Ray America's dental equipment from Infinite because Infinite services the Las Vegas area. See Bakhaj Depo., ECF No. 34-1, pgs. 32-33 at lns. 17-3. This true statement is not a knowingly false representation within the meaning of Section § 598.0915(15). See Wild Game Ng, LLC, 2015 WL 7575352 at *1 (requiring a false representation for Section § 598.0915(15) claims); Guilfoyle, 130 Nev. at 812 (finding no false representation when a true statement is made). And as discussed above, a referral from a manufacturer to a distributor is not an inherent representation of reliability. The Court therefore grants summary judgment to Ray America on Dr. Bakhaj's Section 598.0915(15) claim.

**C. Bakhaj cannot establish actual or apparent authority exists between Infinite and Ray America.**

There is no genuine issue of fact as to whether Infinite acted on Ray America's behalf with apparent authority. To establish respondeat superior liability, the plaintiff must prove that the party who engaged in the misconduct was an agent of the defendant. There are two ways to establish an agency relationship in this context: actual authority and apparent authority. Here, Dr. Bakhaj cannot establish either. So, the Court grants Ray America summary judgment on Dr. Bakhaj's respondeat superior claim.

"To bind a principal, an agent must have actual authority or apparent authority." Simmons Self-Storage v. Rib Roof, Inc., 130 Nev. 540, 549, 331 P.3d 850, 856 (Nev. 2014) (citation modified)."An agent acts with actual authority when, at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act[.]" Id. (internal citation omitted). "When examining whether actual authority exists," Nevada courts usually "focus on an agent's reasonable belief." Id. (internal citation omitted). But in manufacturer/distributor agreements, "an agency is potentially created" "when a manufacturer controls the day to day or operative details of the dealer's business[.]" Hunter Min. Lab'ys, Inc. v. Mgmt. Assistance, Inc.,

104 Nev. 568, 571 (Nev. 1988). Indeed, "[t]his principle of agency . . . does not mean that an agency relationship exists every time one party has a contractual right to control some aspect of another party's business." Id.

Dr. Bakhaj contends that Infinite had actual authority because Ray America permitted Infinite to sell its dental equipment. Bakhaj Mot., ECF No. 28, at 16; Bakhaj Reply, ECF No. 37, at 3-5. Not so.

Under Nevada law, the degree to which a purported agent has authority to control various aspects of its operations can be indicative of the existence of actual authority. For example, the Supreme Court of Nevada has found no agency relationship when the manufacturer "had no power to control" the distributors "expenditures, fix" the distributor's "customer rates, or demand a share in" the distributor's "profits." Hunter Min Lab'ys Inc., 104 Nev. at 571. The Hunter court focused on the fact that the manufacturer "sold computer equipment to" the distributors' "who resold that equipment to the public . . . The dealers set the price at which they . . . sold the" manufacturer's "products to their customers, and" the distributors' "had [no] duty to account to" the manufacturer "for prices charged or profits received. All companies at all times acted independently and in their own names." Id.

Here, like Hunter, the record indicates that Ray America and Infinite acted independently with certain key aspects of Infinite's operations, including pricing and expenses. Specifically, the distribution agreement between Ray America and Infinite notes that Infinite must sell Ray America products "on its own behalf and at its own expense." Bakhaj Exhibits, ECF. No 34-1, at 198; Ray America Exhibits, ECF No. 30-16, at 3. Infinite can then "independently establish sale prices" for Ray America products "to third parties." Bakhaj Exhibits, ECF. No 34-1, at 199; Ray America Exhibits, ECF No. 30-16, at 4. Once Infinite identifies a potential customer, and that potential customer decides to purchase the product, Infinite sends the customer a contract, Infinite then sends purchase order with a ship date and payment to Ray America, and then Ray America ships out the dental equipment. Barnett Depo., ECF No. 30-5, at 12 lns. 6-13; Barnett Depo., ECF No. 34-1 at 12 lns. 6-13. In fact, the distribution agreement also prohibits Infinite use of Ray America's trademarks, names, and other designations "for acknowledgement and advertising of" Ray

America's products without Ray America's "prior written consent." Bakhaj Exhibits, ECF. No 34-1, at 198; Ray America Exhibits, ECF No. 30-16, at 3. The conduct here, like the conduct in Hunter, does not support a finding of actual authority. See Hunter Min Lab'ys Inc., 104 Nev. at 571.

Dr. Bakhaj's argument is unpersuasive. Dr. Bakhaj argues that an agency relationship was created based on actual authority because the distribution agreement prohibited Infinite from engaging sub distributors or other secondary distribution channels. Bakhaj Reply, ECF No. 37, at 4-5. This position is unsupported by Nevada law. The fact that one entity may be able to direct another entity to engage in certain actions or reporting requirements does not without more establish actual authority. For example, in Hunter, the court found no agency relationship between the manufacturer and distributors where the manufacturer required the distributor to submit monthly reports indicating the number of software units installed, the manufacturer had the right to monitor the distributors' advertisements, and the manufacturer required the distributors to maintain premises Hunter Min Lab'ys Inc., 104 Nev. at 570. Here, Ray America exercised less control than the Hunter manufacturer by prohibiting sub-distributors without consent. Thus, no reasonable juror can find an agency relationship between Infinite and Ray America.

Dr. Bakhaj, relying on Newmar Corp. v. McCray, 129 Nev. 638 (Nev. 2013), further argues that Makia Kim's onsite demonstration creates actual authority. But Newmar Corp. does not support Dr. Bakhaj's position. In that case, the Respondent purchased a luxury motor home manufactured by the appellant. Id. at 640. The Respondent, at the time of the sale, noticed issues with the motor home, so she left it in the Appellant's possession for repairs. Id. When the Respondent returned to pick up the motorhome a week later, she noticed the continued issues. Id. She then stated that she would not take possession of the motor home until the Appellant's representative assured her that the Appellant would take care of any problems. Id. The Respondent, only after receiving the sought after "reassurances" from the Appellant, took possession of the motor home. Id. With these facts, the Newmar Corp. court held that "the direct interaction and representations made by Newmar to McCrary expanded the relationship between the two parties and created privity." Id. at 644. That expanded relationship, "[u]nder the unique facts of [that]

case," allowed the court to find privity between the buyer and the manufacturer. Id.

This case is distinguishable. Makia Kim came to Dr. Bakhaj's office to perform an on-site demonstration of new Ray America dental equipment that Infinite was trying to sell to Dr. Bakhaj. Bakhaj Mot., ECF No. 28, pg. 8. Ultimately, Bakhaj did not purchase the dental equipment. Bakhaj Exhibits, ECF No. 28-1, at 56. Here, Dr. Bakhaj, unlike the Respondent in Newmar, was not swayed to make the purchase because of the manufacturer's actions. See Newmar Corp., 129 Nev. At 644. ("the manufacturer, interjected itself into the sales process and through its representations assisted int eh completion of the sales transaction."). More to the point, Dr. Bakhaj does not point to any fact suggesting an expanded relationship establishing privity. This case, therefore, is distinguishable from Newmar Corp.

Construing the facts in the light most favorable to Dr. Bakhaj, the Court finds that no reasonable juror could find that Infinite had actual authority to act on Ray America's behalf. Because that is so, Dr. Bakhaj cannot establish an agency relationship under an actual authority theory. So, the Court grants summary judgment to Ray America Dr. Bakhaj's vicarious liability claim.

The Court further finds that Dr. Bakhaj cannot establish vicarious liability based upon apparent authority. The Court rejects this argument for two reasons. First, the argument was not specifically and distinctly argued in the opening summary judgment motion. See Dream Games of Ariz., Inc. v. PC Onsite, 561 F.3d 983, 995 (9th Cir.2009) (reasoning that arguments "not specifically and distinctly argued" are waived); see generally Bakhaj Mot., ECF No. 28. Second, the Court rejects the claim on the merits. Dr. Bakhaj offers no evidence that supports his assertion that he was aware of facts that would indicate or suggest that Ray America controlled or directed the operations of Infinite. In fact, the text messages show that Barnett, on behalf of Ray America, could not direct Infinite to deliver equipment or a refund. Beyond that, the undisputed evidence shows that Dr. Bakhaj did not rely on any of Ray America's acts. See Simmons Self-Storage, 130 Nev. at 550 (finding no apparent authority where the appellant could not offer evidence that they relied on the respondent's action or that the respondent held the third party out as having authority). As a result, the Court finds that there is no apparent authority.

For all of the foregoing reasons, the Court grants Ray America's motion for summary judgment and denies Plaintiff's motion for summary judgment.

## V. CONCLUSION

**IT IS HEREBY ORDERED** that Ray America's motion for summary judgment (ECF No. 26) is **GRANTED** as to all claims against it.

**IT IS FURTHER ORDERED** that Dr. Bakhaj's motion for summary judgment (ECF No. 28) is **DENIED**.

**IT IS FURTHER ORDERED** that the Clerk of Court is directed to enter judgement accordingly and close this case.

**DATED:** September 30, 2026.

**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**